**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**DEREK SLOANE,**

                                                    **Plaintiff,**

        **vs.**                                                        **10-CV-0688**
                                                                       **(MAD/RFT)**

**BRIAN FISCHER, ET. AL.,**

                                                    **Defendants.**
_____

**APPEARANCES:**                              **OF COUNSEL:**

DERRICK SLOANE
07-A-1140
Auburn  Correctional Facility
P.O. Box 618
Auburn, New York 13021
*Plaintiff Pro Se*

ERIC T. SCHNEIDERMAN                      Roger W. Kinsey, Esq.
Attorney General for the State of New York
The Capitol
Albany, New York 12224-0341
*Attorney for Defendants*

**Mae A. D'Agostino, U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**INTRODUCTION**

        In this *pro se* civil rights action under 42 U.S.C. § 1983, plaintiff claims that defendants

violated his Eighth Amendment rights as a result of his exposure to second-hand tobacco smoke,

also known as environmental tobacco smoke ("ETS").  Defendants move for summary judgment

and dismissal of plaintiff's complaint pursuant to Fed. R. Civ. P. 56. (Dkt. No.45). Plaintiff has opposed the motion. (Dkt. No. 51).[1]

## BACKGROUND

The record contains few undisputed facts.[2] The facts set forth in this section are taken from: (1) the Complaint; (2) the Answer; (3) the exhibits and evidence submitted by defendants in support of their Motion for Summary Judgment; and (4) plaintiff's deposition transcript. In support of the motion, defendants filed a Statement of Material Facts pursuant to Local Rule 7.1(a)(3).[3] The Local Rule also requires that the nonmoving party file a response to the moving party's Statement of Material Facts, which admits or denies each of the moving party's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises. *Jamison v. Metz*, 2011 WL 4345297, at *13, n. 6 (N.D.N.Y. 2011) (citing N.D.N.Y. L.R. 7.1(a)(3)). Here, defendants' statement contains few "facts" with support in the record. Moreover, plaintiff has failed to respond to defendants' statement. To the extent that some of defendants' statements are supported by the record, the Court will deem those facts admitted by plaintiff. *See Sledge v. Kooi*, 564 F.3d 105, 108 (2d Cir.

---

[1] On August 25, 2011, plaintiff filed a motion seeking to strike defendants' exhibits from the motion. (Dkt. No. 52). On November 14, 2011, United States Magistrate Judge Randolph F. Treece issued an Order denying plaintiff's request. Accordingly, the exhibits will be considered by this Court on the motion.

[2] In support of the motion, defendants' provide the Declaration of Janet Collins, a nurse administrator at Great Meadow Correctional Facility. Collins avers that she reviewed plaintiff's medical records and provides opinions regarding those records. Plaintiff objects to, "defendant's intent[ion] to call J. Collins, a nurse administrator at GMCF and attempting to support the defendant's implausibility defense". While plaintiff's medical records may be admissible under certain exceptions to the hearsay rule, the record does not contain an affidavit from a qualified witness or custodian supporting the admissibility of plaintiff's medical records. Moreover, the records have not been properly certified. Despite these evidentiary issues, the Court will consider the records as part of the motion because plaintiff relies upon the records in support of his claims. *See Goris v. Breslin*, 2010 WL 376626, at *1 , n.1 (E.D.N.Y. 2010); *see also Sheils v. Flynn*, 2009 WL 2868215, at *2, n. 2 (N.D.N.Y. 2009).

[3] Pursuant to Local Rule 7.1(a)(3), any motion for summary judgment must have attached to it a statement of material facts containing "each material fact about which the moving party contends there exists no genuine issue. Each fact listed shall set forth a specific citation to the record where the fact is established." N.D.N.Y.L.R. 7.1(a)(3).

2009).   The facts, as discussed herein, are for the relevant time period as referenced in the complaint.

Plaintiff is an inmate of the New York State Department of Corrections and Community Involvement ("DOCCS").[4]  Currently, plaintiff resides at Auburn Correctional Facility. Defendant Brian Fischer ("Fischer") is the Commissioner of DOCCS.  Defendant David A. Rock ("Rock") was the Superintendent of Great Meadow Correctional Facility ("Great Meadow"). Defendant Charles Kelly ("Kelly") is the Deputy Superintendent for Security at Great Meadow. Defendant Karen Bellamy ("Bellamy") is the Director of the Inmate Grievance Program ("IGP") for DOCCS.  Defendants Peter McNally ("McNally"), John C. Smith ("Smith") and Mark Ross ("Ross") are Correction Officers at Great Meadow.

In June 1999, DOCS adopted a system-wide Smoke-Free Policy, effective July 1, 1999. The plan was implemented for, "the complete elimination of all indoor smoking within Department correctional facilities".   The plan consisted of four separate phases, each lasting six months, to gradually transition to an indoor smoke-free environment.  According to the policy, beginning January 1, 2001, smoking would be prohibited within all facility buildings and permitted only outdoors.

From May 2007 until December 2010, plaintiff was incarcerated at Great Meadow. During plaintiff's incarceration at Great Meadow, the Smoke-Free policy was in effect.  Rock ordered all correctional officers and supervisory staff to issue disciplinary "tickets" to any inmates who violated DOCS' Smoke-Free policy.  From 2008 through 2009, a total of 106 disciplinary tickets were issued to Great Meadow inmates for violating the policy.

---

[4] DOCCS was formerly known as the N.Y. Department of Correctional Services ("DOCS").

Complaints about exposure to second-hand tobacco smoke and threats from officers are proper subjects for grievances under DOCS grievance procedures. The record indicates that plaintiff filed three grievances related to the issues herein.[5] On January 16, 2009, plaintiff filed a grievance seeking a transfer from A Block "due to the risk of my health in this building, facility, etc. this is because I am being subjected to second hand smoke" (Grievance #47,507-09).[6] On February 16, 2009, plaintiff's grievance was denied. The IGRC noted:

> DOCS rule 122.10 and facility memorandum 8/17/08[7] are being enforced in this facility. The IGRC does acknowledge that at times inmates do violate policy. These isolated incidents are addressed via the disciplinary system.

On September 20, 2009, plaintiff filed another grievance regarding alleged exposure to second-hand tobacco smoke and requested a transfer to a smoke-free zone (Grievance #48742-09). Plaintiff asserted:

> I have tryed [sic], attempted, warned, admonition [sic] on several occasions, months, years, etc. Several attempts has [sic] been made to resolve, resolute, etc. in attempting and protecting my health and well being. Time and again, over, and [sic] over, etc. I have been subject to second-hand smoke, tobacco smoke that is exhaled by smokers or is given off by burning tobacco and is inhaled by persons nearby.

---

[5] Defendants argue that plaintiff filed only one grievance regarding the alleged exposure to second hand tobacco smoke and threats from two officers. As the grievances are annexed to the complaint and have been assigned grievance numbers with date stamps from DOCS, the Court will consider all three grievances within the context of the motion. Moreover, defendants do not make any arguments for dismissal relating to the failure to exhaust administrative remedies.

[6] Plaintiff's grievances are annexed as exhibits to the complaint.

[7] A copy of the August 17, 2008 memorandum issued by Capt. S. Rowe, Acting Deputy Superintendent for Security, is annexed to Kelly's Declaration, as Exhibit "C", in support of the within motion. However, the memorandum is not in proper admissible form.

In the grievance, plaintiff also claimed that he was threatened by C.O. Ross who stated that he would not stop smoking.  Plaintiff also alleged that C.O. Smith put him in danger when he, "advertised" the fact that plaintiff complained about second-hand smoke.

On October 15, 2009, the Superintendent denied plaintiff's grievance as unsubstantiated. The Superintendent noted, ". . . the grievant has not provided a single witness to support his allegations.  The employees identified in this complaint have denied the allegations put forth, and have submitted written documentation to that effect."

On December 4, 2009, Karen Bellamy notified plaintiff that his grievance "entitled Threatened Over Second Hand Smoke" was received by the Central Office Review Committee ("CORC") on November 10, 2009.  On December 16, 2009, CORC upheld the Superintendent's determination:

> Officer R...denies threatening the grievant and smoking in the housing unit.  Officer S...denies making any comments about the grievant's complaints.  He further states that he was not aware of the grievants' May or June grievances.

On March 4, 2010, plaintiff filed a grievance (Grievance #49632-10) indicating, "this is my fourth formal complaint dealing with ETS" and requested a transfer to a cell with a window or a "well-ventilated" cell.  Plaintiff claimed that he suffered from, "sinus problems, headaches, dizziness, shortness of breath, etc."   On March 19, 2010, in a letter from Karen Bellamy, plaintiff was advised that, "Commissioner Fischer has referred your March 4, 2010 letter to me for a response".[8]  Bellamy advised that plaintiff's grievance regarding a transfer (49632-10) was pending an IGRC hearing. On March 24, 2010, plaintiff's grievance was denied.  The IGRC

---

[8] Plaintiff's March 4, 2010 letter to Fischer is not part of the record herein.

advised plaintiff to address his medical concerns with health services, "[t]hey will then determine if grievant should be transferred due to medical issues and concerns".

From February 2007 through March 2010, plaintiff was seen by the medical staff at Downstate Correctional Facility and Great Meadow.[9]  During that time, plaintiff made complaints of bi-lateral foot and low back pain.  Plaintiff also had issues with his eyesight and requested a knee brace, a new mattress and special boots.  Plaintiff alleges that, during this time, he also complained of a sore throat, dizziness, headaches, watery eyes and shortness of breath.

In June 2010, plaintiff commenced the within action.  Plaintiff claims that defendants were, "deliberately indifferent in exposing plaintiff to levels of second hand smoke that posed a serious risk of damage to plaintiff's health".  Plaintiff also claims that he was threatened by C.O. Ross and also alleges that C.O. Smith, "went around advertising in (A) block that plaintiff filed a grievance" about second-hand smoke.  Plaintiff contends that Smith's statement, "placed plaintiff at a high risk of danger and potential legal injury".

Defendants move for summary judgment arguing: (1) Fischer was not personally involved in the alleged constitutional deprivation; (2) defendants are entitled to summary judgment and dismissal of plaintiff's Eighth Amendment claims; (3) plaintiff's claims against Bellamy must be dismissed for lack of personal involvement; (4) plaintiff's claims against Ross and Smith relating to alleged threats must be dismissed; and (5) defendants are entitled to qualified immunity (Dkt. No. 45).  Plaintiff opposes the motion. (Dkt. No. 51).

## DISCUSSION

## I.    Summary Judgment Standard

---

[9]  According to the record, plaintiff was transferred to Great Meadow in May 2007.

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56 ( c ). Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 258 (1986). Irrelevant or unnecessary facts do not preclude summary judgment, even when they are in dispute. *See id.* The moving party bears the initial burden of establishing that there is no genuine issue of material fact to be decided. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). With respect to any issue on which the moving party does not bear the burden of proof, it may meet its burden on summary judgment by showing that there is an absence of evidence to support the nonmoving party's case. *See id.* at 325. Once the movant meets this initial burden, the nonmoving party must demonstrate that there is a genuine unresolved issue for trial. *See* Fed. R. Civ. P. 56(e). It is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleadings. *See Celotex,* 477 U.S. at 324 (quoting Fed. R. Civ. P. 56( c )(e)).

"Defendants can meet their burden of establishing their entitlement to summary judgment by relying on plaintiff's medical records to establish the absence of any evidence supporting deliberate indifference to his mental health needs." *Guarneri v. Hazzard*, 2010 WL 1064330, at *8 (N.D.N.Y. 2010) (citing *Mills v. Luplow*, 2009 WL 2579195, at *8 (W.D.N.Y. 2009)). "Though conventional wisdom might dictate the submission of affidavits from the primary actors ... [the] defendants' decision to rely instead upon the lack of evidentiary support for plaintiff's claims, is sufficient to cast the burden upon the plaintiff to come forward with evidence demonstrating the existence of genuinely disputed material issues of fact for trial with regard to those claims." *Id.*

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted). Where a plaintiff has failed to properly respond to a defendant's Statement of Material Facts ("Rule 7.1 Statement"), the facts as set forth in that Rule 7.1 Statement will be accepted as true to the extent that those facts are supported by the evidence in the record. *See Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 243 (2d Cir. 2004) (holding that the court may not rely solely on the movant's statement of undisputed facts contained in its Rule 56.1 statement and must be satisfied that the movant's assertions are supported by the evidence in the record).

In reviewing a *pro se* case, the court "must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell*, 289 F. Supp.2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (other citations omitted)). The Second Circuit has opined that the court is obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education. *Govan*, 289 F.Supp.2d at 295 (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). However, this does not mean that a *pro se* litigant is excused from following the procedural requirements of summary judgment. *Id.* at 295 (citing *Showers v. Eastmond*, 2001 WL 527484, at *2 (S.D.N.Y. 2001)). Specifically, "a *pro se* party's 'bald assertion,' completely unsupported by evidence" is not sufficient to overcome a motion for summary judgment. *Lee v. Coughlin*, 902 F.Supp. 424, 429 (S.D.N.Y. 1995) (citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

## II.    Fischer's Personal Involvement

Defendant Fischer argues that he was not personally involved with the constitutional deprivations as alleged by plaintiff. "[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir.2010). Supervisory personnel may be considered "personally involved" only if they (1) directly participated in the violation; (2) failed to remedy that violation after learning of it through a report or appeal; (3) created, or allowed to continue, a policy or custom under which the violation occurred; (4) had been grossly negligent in managing subordinates who caused the violation; or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). Letters to a supervisor, even if the supervisor responds, do not demonstrate the requisite personal involvement. *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997). Moreover, it is well settled that "referring ... letters [and grievances] to staff for investigation is not sufficient to establish personal involvement." *Ward v. LeClaire*, 2010 WL 1189354, at *5 (N.D.N.Y. 2010) (the plaintiff's claims against Fischer regarding exposure to ETS were dismissed for lack of personal involvement).

Here, plaintiff claims that Fischer is liable because, "his duty is to make sure that every correctional facility is following DOCS regulations, customs and practices". Plaintiff testified that he wrote to Fischer complaining about his conditions of confinement and that Fischer never responded. Fischer avers that his office, "routinely received several thousand letters per year addressed to me from inmates". Fischer further states that these letters are reviewed at his office and then forwarded to the relevant division or bureau. Fischer never read any letters or personally responded to any letters sent by plaintiff.

9

Even viewing the evidence in a light most favorable to plaintiff, the allegations against Fischer must be dismissed. The indisputable evidence establishes that Fischer was not involved in the daily oversight of the Smoke-Free policy at Great Meadow. At best, the evidence demonstrates that plaintiff complained to Fischer and that Bellamy responded to plaintiff in lieu of a response from Fischer. This evidence is insufficient to establish personal involvement in the alleged constitutional deprivation. "The failure of a supervisory official to investigate a letter of protest written by an inmate is not sufficient to show personal involvement." *Silvagnoli v. Fischer*, 2010 WL 1063849, at *8 (N.D.N.Y. 2010) (citation omitted) (the fact that the defendant or one of his staff, responded to the plaintiff's letters is not sufficient to confer personal responsibility); *see also Gonzalez v. Sarreck*, 2011 WL 5051341, at *15 (S.D.N.Y. 2011) (the defendant was not personally involved when he delegated the handling of the plaintiff's complaints to a subordinate). Even if Fischer, as plaintiff suggests, ignored his complaints, that is insufficient to establish personal involvement. *Tafari v. Stein*, 2009 WL 331378, at *10 (W.D.N.Y. 2009); *see also Wright v. Genovese*, 694 F.Supp.2d 137, 161, n. 16 (N.D.N.Y. 2010) (even if the defendant ignored plaintiff's complaints, that does not make him liable under Section 1983). The allegations against Fischer mst be dismissed as there is no evidence that Fischer was personally involved in plaintiff's alleged constitutional violation involving ETS. *See Islam v. Fischer*, 2008 WL 110244, at *4 (S.D.N.Y. 2008) (the plaintiff failed to allege facts regarding the specific nature of Fischer's involvement in his complaints about second hand smoke). Thus, defendant Fischer's motion for summary judgment and dismissal of plaintiff's complaint based upon a lack of personal involvement is granted.

**III.   Eighth Amendment Claims**

10

Plaintiff commenced this action against Rock and Kelly claiming they were responsible for enforcing all policies and procedures at Great Meadow.  Plaintiff commenced this action against McNally because "he smokes in the hallways in the A Block".

An inmate may state a cause of action under the Eighth Amendment by alleging that prison officials acted with deliberate indifference and exposed him to levels of ETS, or second-hand smoke, that posed an unreasonable risk of serious damage to his future health.  *Helling v. McKinney*, 509 U.S. 25, 35 (1993).  To prove an Eighth Amendment violation, plaintiff must establish both subjective and objective elements.  *Colon v. Drew*, 335 F. App'x 86, 87 (2d Cir. 2009).

### 1.    Objective Element

To prove the first element, plaintiff must establish that the injuries, of which he complains, were caused by exposure to unreasonably high levels of ETS.  *Johnson v. Goord*, 2004 WL 2199500, at *15 (S.D.N.Y. 2004).  However, plaintiff need not establish actual harm if he can prove that defendants exposed him to unreasonably high level of ETS that created an unreasonable risk of serious future harm.  *Helling*, 509 U.S. at 35 (the plaintiff must demonstrate that he was exposed to levels of ETS that "violated contemporary standards of decency").  While inmates have the constitutional right to be free of unreasonable levels of ETS exposure, they do not have the right to be free of any and all levels of exposure.  *Johnson*, 2005 WL 281176, at *7.

Here, defendants argue that plaintiff did not suffer any symptoms due to alleged exposure. Moreover, plaintiff cannot establish the objective prong of his ETS claim because he did not share

11

his cell with a smoker.[10]  In opposition, plaintiff argues that "credibility determinations are for the fact-finder, not for the judge on summary judgment".

Plaintiff does not assert, nor do the medical records support, that he suffers from asthma or any other medical condition that may be exacerbated by ETS exposure.  During his deposition, plaintiff testified that he complained of a sore throat, dizziness and headaches as a result of ETS exposure.  However, the medical records belie plaintiff's claims.  From 2007 through 2010, plaintiff's Ambulatory Health Records lack any reference to the aforementioned complaints.   The Court has conducted an independent review of plaintiff's medical records.  Indeed, the records do not even mention ETS exposure or any symptoms or ailments that can reasonably relate to second-hand smoke exposure.  *See Enigwe v. Zenk*, 2007 WL 2713849, at *3 (E.D.N.Y. 2007) (the plaintiff's medical records did not demonstrate that he ever sought treatment for ailments he allegedly suffered due to ETS exposure); *but cf. Braxton v. Nichols*, 2010 WL 1010001, at *4 (S.D.N.Y. 2010) (the plaintiff attached medical records demonstrating that he repeatedly complained to physicians over a period of years about lung and nasal congestion due to second-hand smoke).  The only complaints plaintiff made during the time period in question related to his foot pain, back pain and vision issues.  Plaintiff's conclusory claims that he made complaints relating to ETS are not supported by the medical records and plaintiff has not provided any independent evidence to bolster his contentions.  Moreover, while plaintiff claims he complained to the medical staff, he cannot recall the names of the physicians he saw and admits that he never received treatment for any of the injuries he allegedly suffered due to ETS exposure.  Thus,

---

[10] Defendants also claim that plaintiff cannot establish the objective element because he purchased cigarettes at the commissary.  While defendants annex documentation to support this assertion, the documentation is not in proper admissible form and will not be considered on the motion.

plaintiff has not established that he suffered from a present serious medical condition due to exposure.

In further support of the objective prong, plaintiff also asserts that he was exposed to high levels of ETS that could impact his future health. To wit, plaintiff testified that he was surrounded by smokers and that the inmates and staff smoked "wherever they choose. Inmates would smoke inside the cell; the staff would smoke outside the cells at their stations or where they posted at". When plaintiff was asked to estimate what percentage of the day he was exposed to ETS, plaintiff testified, "whenever they smoked. There's no limit". Plaintiff also claimed he was exposed to "more smoke" when he walked through the hallways to the mess hall or showers. Even assuming the facts in a light most favorable to plaintiff, his alleged exposure fails to rise to a level that a reasonable jury could find "repugnant to the conscience of mankind," or "so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk," *Zaire v. Artuz,* 2003 WL 230868, at *5 (S.D.N.Y. 2003) (citations omitted). Plaintiff was housed in his own cell. Plaintiff testified that, by his own choice, he never left his one-man cell and that he refused to go out for recreation. "It is questionable whether a plaintiff can succeed on an ETS claim where he does not share his cell with a smoker". *Enigwe*, 2007 WL 2713849, at *5. Plaintiff's claims of excessive smoking in the area of his cell are contradicted by defendants. Defendants McNally and Ross aver that when they smoked, they did so only in approved locations. Plaintiff presents only conclusory assertions regarding the level of ETS at Great Meadow and has not provided any evidence, including affidavits from other inmates or any other documentation, to support his claim that conditions rose to a level which today's society would not tolerate.

Further, a non-smoking policy was clearly in place at Great Meadow during the time plaintiff was incarcerated. While plaintiff has alleged that the non-smoking policy was flagrantly violated, he has offered no evidentiary support for this claim. *See Enigwe*, 2007 WL 2713849. Plaintiff has failed to provide any evidence of even the general level of ETS to which he was exposed during his incarceration at Great Meadow. *See Keesh v. Artuz*, 2008 WL 3166654, at *3 (S.D.N.Y. 2008); *see also LaCroix v. Williams*, 2000 WL 1375737, at * (W.D.N.Y. 2000) (the plaintiff's allegations that he was housed in a twenty two man dormitory where twenty one men smoked cigarettes and that the building was not properly ventilated were patently insufficient as there was no objective medical evidence supporting plaintiff's grievances). Accordingly, plaintiff cannot meet the objective prong of the Eighth Amendment test as has not demonstrated that he suffered from a serious medical condition or that he suffered from unreasonably high levels of ETS to establish a risk to his future health.

### 2.    Subjective Element

As to the subjective element, plaintiff must establish that defendants knew of and disregarded an excessive risk to his health or safety. *Colon*, 335 F. App'x at 88. The Court should consider prison officials, "current attitudes and conduct and any such policies that have been enacted". *Johnson*, 2004 WL 2199500, at *16 (citing *Warren v. Keane*, 196 F.3d 330, 333 (2d Cir. 1999)). "Whether a prison has a non-smoking policy bears heavily on the question of deliberate indifference". *Helling*, 509 U.S. at 36. Monthly smoking-related misbehavior reports may support a plaintiff's contention that ETS levels were high due to inmate smoking, but also support the defendant's contention that some efforts were undertaken to enforce a smoke-free policy. *Ward*, 2009 WL 6302822, at *7.

Even assuming plaintiff suffered from a serious medical condition, defendants claim that plaintiff cannot meet the subjective prong since Great Meadow had a smoke-free policy that was effectively implemented with 106 disciplinary tickets issued for violations.  Defendants Rock and Kelly argue that they took reasonable steps to ensure that the policy was followed under their command.  As discussed, Great Meadow had a non-smoking policy in place which permitted smoking only in outdoor areas.  While the policy may have been violated by inmates and staff, "imperfect enforcement" does not amount to deliberate indifference.  *See Scott v. District of Columbia*, 139 F.3d 940, 944 (C.A.D.C. 1998).  Defendants provided evidence establishing that Great Meadow officials enforced the non-smoking policy.  Smoking Reports from January 2008 through December 2009 demonstrate that a total of 106 disciplinary tickets were issued to inmates who violated the Smoke-Free policy.   Indeed, Great Meadow concedes that inmates violated the policy but that the violations were addressed through the disciplinary process.  The issuance of disciplinary tickets establishes that prison officials were "hardly indifferent to the enforcement of the policy".  *See Johnson*, 2004 WL 2199500, at *17 (the defendants came forward with a database of smoking violations establishing that in 2002, there were 71 disciplinary proceedings against inmates for violating the smoking restrictions).

Moreover, defendants' general awareness that plaintiff requested transfers due to allegedly high levels of ETS exposure does not establish deliberate indifference. *See Enigwe*, 2007 WL 2713849, at *6.   In his grievances, plaintiff asserted in a conclusory manner, that he was exposed to second-hand smoke.  Plaintiff did not provide any details of such exposure, including the location, dates, times or names of the people who were allegedly violating the non-smoking policy.  With regard to plaintiff's request for a transfer, no physician ever suggested that plaintiff should be transferred due to health issues or potential health issues relating to ETS.  *See Enigwe*,

15

2007 WL 2713849, at *3. Therefore, defendants advised plaintiff that he should address his

concerns with the medical staff and that they would determine if a transfer was appropriate.

Based upon the record, plaintiff's grievances were fully investigated and addressed. *See Johnson*,

2004 WL 2199500, at *17 ("the manner in which the grievances were handled does not show

deliberate indifference to the merits of the complaints but reflects the ongoing difficulty in

ensuring full compliance with existing policies").

In a strikingly similar case, the United States District Court for the Southern District New

York held:

> The only conclusion that may be drawn from the evidence is that there
> has been a policy of vigorous enforcement since the date of the indoor
> ban, but that perfect compliance with the smoking ban by inmates and
> employees of the facility has been at least as difficult to secure in the
> Green Haven facility as it has been in society at large. No system of
> enforcement, however, will be perfect, and prison officials cannot be
> held accountable under the Constitution for failing to extinguish every
> determined attempt to flout the rules. Because the plaintiffs have failed
> to demonstrate anything more than isolated instances of
> noncompliance with the January 1, 2001 smoking ban, defendants are
> entitled to summary judgment.

*Johnson*, 2004 WL 2199500, at *17.

To summarize, there is no evidence that plaintiff suffers from a present, serious medical

condition related to ETS exposure. There is no evidence that plaintiff was exposed to

unreasonably high levels of ETS, while incarcerated in a one-man cell, that would subject

plaintiff to future harm. The evidence further establishes that defendants were not deliberately

indifferent to any objective medical needs. Plaintiff failed to offer any evidentiary support, in

affidavit form or otherwise, to contradict defendants' assertions regarding their efforts to enforce

the Smoke-Free policy. *See Simmons v. Nalley*, 2009 WL 3199552, at *10 (N.D.N.Y. 2009) (the

plaintiff failed to rebut the assertions that FCI Raybrook officials enforced smoking policies with

16

anything other than conclusory allegations).   Accordingly, defendants' motion for summary judgment and dismissal of plaintiff's Eighth Amendment claims is granted.

**IV.    Claims Against Smith and Ross**

Plaintiff testified that he sued Officer Smith because, "he put [plaintiff] in harm's way by advertising to A Block inmates that [plaintiff] filed several grievances . . . about his health and well-being."[11]   Plaintiff also claims that Officer Ross threatened plaintiff when he implied that he would not stop smoking or comply with DOCS procedures.

"Allegations of verbal threats or harassment, without more, do not give rise to a constitutional claim."   *Bunting v. Conway*, 2010 WL 5332280, at *14 (W.D.N.Y. 2010) (citing *Purcell v. Coughlin,* 790 F.2d 263, 265 (2d Cir. 1986)).   In September 2009, plaintiff filed a grievance relating to the alleged threats.   Plaintiff admitted that he did not actually hear Ross make any threats but claims, "they informed [me] what was going on in the block".   The grievance was investigated and denied by both the Superintendent and the CORC.   Plaintiff does not allege that he sustained any physical injury as a result of alleged threats by Smith or Ross.   In fact, during his deposition, plaintiff conceded that he did not make any complaints to medical personnel after he filed his grievance.   Moreover, plaintiff admitted that he did not change his behavior after Smith's alleged threats.   Plaintiff testified as follows:

> Q.    Did you stop complaining?
>
> A.    No. I continued.  As a matter of fact, he just made me more - - I guess you could say he supported me more by going further with this.

Consequently, defendants' motion for summary judgment is granted and plaintiff's claims that Ross and Smith threatened him, are dismissed.

---

[11] Plaintiff testified that Smith did not smoke.

**V.    Claims Against Bellamy**

Plaintiff testified that he commenced an action against Bellamy, "because she is part of the inmate grievance policies and procedures" and ". . . this was brought to her several times". Plaintiff further contends, "it is her duty to make sure that grievances are processed". "[T]he law in this circuit remains unclear concerning whether the denial of a grievance, standing alone, is sufficient to establish a defendant's personal involvement in an alleged § 1983 violation". *Crenshaw v. Sciandra*, 766 F.Supp.2d 478, 483 (W.D.N.Y. 2011).  However, here, the evidence establishes that plaintiff's grievances were investigated and addressed and that Bellamy was not personally involved in any alleged constitutional violations.  Bellamy states that she is the Director of IGP but not a voting member of CORC and is "solely responsible for the administrative functions of the IGP and CORC".  Bellamy has no authority with respect to CORC decisions.  Plaintiff's conclusory allegations against Bellamy are insufficient to defeat a motion for summary judgment.  *Persad v. Savage*, 2004 WL 1570289, at * (W.D.N.Y. 2004) (the plaintiff could not sustain a cause of action against Bellamy due to her lack of personal involvement). Moreover, as plaintiff did not suffer any constitutional violation under the Eighth Amendment, Bellamy is entitled to summary judgment and plaintiff's claims against Bellamy are dismissed.

**VI.    Qualified Immunity**

Defendants are entitled to summary judgment and dismissal of plaintiff's claims.  Thus, the issue of qualified immunity is moot and will not be discussed herein.

**CONCLUSION**

**It is hereby**

18

**ORDERED**, that defendant Fischer's motion for summary judgment and dismissal of plaintiff's complaint (Dkt. No. 45) for lack of personal involvement is **GRANTED**; it is further

**ORDERED,** that defendants' motion for summary judgment and dismissal of plaintiff's Eighth Amendment claims (Dkt. No. 45) is **GRANTED** as to all defendants; it is further

**ORDERED,** that defendant Bellamy's motion for summary judgment and dismissal of plaintiff's complaint (Dkt. No. 45) is **GRANTED**; it is further

**ORDERED**, that defendant Ross' and Smith's motions for summary judgment and dismissal of plaintiff's claims relating to alleged threats is **GRANTED**; it is further

**ORDERED**, that defendants' motion for summary judgment and dismissal of plaintiff's claims (Dkt. No. 45) based upon qualified immunity is denied as moot; it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order upon the parties by regular and electronic mail, and it is further;

**ORDERED** that pursuant to Local Rule 72.3, the parties are advised that the referral of this motion to the Magistrate Judge was RESCINDED, as such, any appeal taken from this Order will be to the Court of Appeals for the Second Circuit.

**IT IS SO ORDERED.**

Dated:   January 25, 2012
         Albany, New York

Mae A. D'Agostino
U.S. District Judge